Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Steven Klepinger*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Steven Klepinger, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Life Insurance Company of North America; TMC Healthcare; TMC Healthcare Disability Plan, | |
| Defendants. | |

Now comes the Plaintiff Steven Klepinger (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

### *Jurisdiction*

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

1   U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of

2   the United States.

*Parties*

4       2.      Plaintiff is a resident of Pima County, Arizona.

5       3.      Upon information and belief, TMC Healthcare (hereinafter referred to as the

6   "Company") sponsored, administered and purchased a group short term disability insurance

7   policy which was fully insured by Life Insurance Company of North America (hereinafter

8   referred to as "LINA").  The specific LINA short term disability group insurance policy

9   is known as Group Policy No.: VDT-980060 (hereinafter referred to as the "Policy").

10  The Company's purpose in sponsoring, administering and purchasing the Policy was to

11  provide short term disability insurance for its employees.  Upon information and belief, the

12  LINA Policy may have been included in and part of an employee benefit plan,

13  specifically named the TMC Healthcare Disability Plan (hereinafter referred to as the

14  "Plan") which may have been created to provide the Company's employees with welfare

15  benefits.  At all times relevant hereto, the Plan constituted an "employee welfare benefit

16  plan" as defined by 29 U.S.C. §1002(1).

17      4.      Upon information and belief, LINA functioned as the claims administrator of

18  the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the

19  Plan may not have made a proper delegation or properly vested fiduciary authority or power

20  for claim administration in LINA.

21      5.      Upon information and belief, Plaintiff alleges LINA operated under a conflict

22  of interest in evaluating his short term disability claim due to the fact that it operated in dual

23  roles as the decision maker with regard to whether Plaintiff was disabled as well as the

payor of benefits.  LINA's conflict existed in that if it found Plaintiff was disabled, it was then liable for the payment of his disability benefits.

6.     The Company, LINA and the Plan conduct business within Pima County and all events giving rise to this Complaint occurred within Arizona.

### Venue

7.     Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### Nature of the Complaint

8.     Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee benefits he may be entitled to from the Plan and any other Company Plan, as a result of being found disabled in this action.

9.     After working for the Company as a loyal employee, Plaintiff became disabled on or about November 21, 2014, due to serious medical conditions and was unable to work in his designated occupation as a HR IS Analyst.  Plaintiff has remained disabled as that term is defined in the relevant Policy continuously since that date and has not been able to return to any occupation as a result of his serious medical conditions.

10.     Following his disability, Plaintiff filed a claim for short term disability benefits under the relevant Policy which was administered by LINA, meaning it made the decision with regard to whether Plaintiff was disabled.

11.     The LINA Policy provides the following definition of disability pertaining to short term disability benefits:

"An employee is Totally Disabled if, because of Injury or Sickness, he or she is unable to perform all the substantial and material duties of his or her regular occupation, or solely due to Injury or Sickness, is unable to earn more than 80% of his or her Indexed Covered Earnings."

12.     In support of his claim for short term disability benefits, Plaintiff submitted to LINA medical records from his treating physicians which supported his allegation that he met the definition of disability as defined in the relevant Policy.

13.     LINA informed Plaintiff in a letter dated December 11, 2014 that it was denying his claim for disability benefits.

14.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed LINA's December 11, 2014 denial of his claim and submitted to LINA additional medical evidence demonstrating he met any definition of disability set forth in the Policy.

15.     Plaintiff submitted to LINA a narrative letter dated December 22, 2014 from his current treating board certified family physician, who opined, "…it [is] impossible for [Plaintiff] to perform his current job duties to the expectations of his employer."

16.     Upon information and belief, as part of its review of Plaintiff's claim for disability benefits, LINA also obtained a medical records only "paper review" from one of its own employees, Hripaimeh Aivazian, RN, MSN, CCM.  Upon information and belief, Plaintiff believes Mr. Aivazian is a LINA employee who has an incentive to protect his own employment by providing paper reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to LINA and which supported the denial of Plaintiff's claim.

17.     Plaintiff questions the independence, impartiality and bias of LINA's own employee to fully and fairly review his claim and alleges Mr. Aivazian's opinions are adversarial to his claim because of his employment relationship with LINA.  Plaintiff

believes LINA's financial conflict of interest is a motivating factor in why it referred Plaintiff's claim to its own employee for review.

18.   Given that Mr. Aivazian's medical qualifications are unknown, plaintiff further believes Mr. Aivazian may not be the appropriate medical professional to conduct a review of his claim as he may not have the appropriate medical expertise and/or credentials to adequately review all of Plaintiff's disabling diagnoses.

19.   Prior to rendering its February 10, 2015 denial in Plaintiff's claim, LINA never shared with Plaintiff the report authored by Mr. Aivazian and did not engage Plaintiff or his treating medical providers in a dialogue so he could either respond to the report and/or perfect his claim.  LINA's failure to provide Plaintiff with the opportunity to respond to Mr. Aivazian's report precluded a full and fair review pursuant to ERISA.  Plaintiff alleges that LINA's action was also an ERISA procedural violation and violated Ninth Circuit case law.

20.   In a letter dated February 10, 2015, LINA notified Plaintiff it had denied his claim for short term disability benefits under the Policy.  In the letter, LINA also notified Plaintiff he could file a civil action lawsuit in federal court pursuant to ERISA.

21.   Upon information and belief, Plaintiff alleges LINA's February 10, 2015 denial letter confirms it failed to provide a full and fair review, and in the process committed several procedural violations pursuant to ERISA due to among other reasons, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence.

22.     In evaluating Plaintiff's claim on appeal, LINA had an obligation pursuant to ERISA to administer Plaintiff's claims "solely in his best interests and other participants" which it failed to do. [1]

23.     LINA failed to adequately investigate Plaintiff's claim and failed to engage her in a dialogue during the appeal of his claim with regard to what evidence was necessary so Plaintiff could perfect his appeal and claim.  LINA's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law and a reason he did not receive a full and fair review.

24.     Plaintiff believes LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to have Plaintiff's claim reviewed by an appropriate medical professional, failing to have his claim reviewed by a non-LINA employee; failing to credit Plaintiff's reliable evidence; failing to adequately investigate his claim; failing to have him personally examined by a medical professional when the policy allowed for one; providing one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by him and/or de-emphasizing medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

his medical evidence as well as the impact the combination of those diagnoses and impairments would have on his ability to work; failing to engage Plaintiff in a dialogue so he could submit the necessary evidence to perfect his claim and failing to consider the impact the side effects from Plaintiff's medications would have on his ability to engage in any occupation.

25.     Plaintiff alleges the reason LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest that manifested as a result of the dual roles LINA undertook as decision maker and payor of benefits and provided it with a financial incentive to deny his claim.

26.     Plaintiff is entitled to discovery regarding LINA's aforementioned conflicts of interest and any individual who reviewed his claim and the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of any conflict of interest and/or ERISA procedural violation which may have impacted or influenced LINA's decisions to deny his claim.

27.     With regard to whether Plaintiff meets the definition of disability set forth in the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the policy confers discretion, the unlawful violations of ERISA committed by LINA as referenced herein are so flagrant they justify *de novo* review.

28.     As a direct result of LINA's decision to deny Plaintiff's disability claim, he has been injured and suffered damages in the form of lost short term disability benefits, in addition to other potential employee benefits he may have been entitled to receive through or from the Plan, any other Company Plan and/or the Company as a result of being found disabled.  Plaintiff believes other potential employee benefits may include but not be limited

to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for him and his family/dependents.

29.     Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

30.     Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for losses he incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.     For an Order requiring Defendants to pay Plaintiff his short term disability benefits and any other employee benefits he may be entitled to as a result of being found disabled pursuant to the Policy, from the date he was first denied these benefits through the date of judgment and prejudgment interest thereon;

B.     For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as he meets the conditions for termination of benefits;

C.     For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D.     For such other and further relief as the Court deems just and proper.

DATED this 26th day of June, 2015.

SCOTT E. DAVIS. P.C.

By:     */s/ Scott E. Davis*
        Scott E. Davis
        Attorney for Plaintiff

-8-